UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMULFO SALOME GARZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-0445-BK |
| | § | |
| NANCY BERRYHILL, | § | |
| Acting Commissioner of Social | § | |
| Security, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

The parties have consented to proceed before the magistrate judge. Doc. 20. Now before the Court are the parties' cross-motions for summary judgment.[1] Doc. 17; Doc. 18. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* is **DENIED**, Defendant's *Motion for Summary Judgment* is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**I. BACKGROUND**

**A.  Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying his claim for disability insurance benefits and supplemental security income under the Social Security Act ("the Act"). Plaintiff filed for benefits in October 2013, claiming that he became disabled in March 2012. Doc. 14-6 at 2-15. Plaintiff's application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 14-3 at 2-4, 20-29; Doc. 14-5 at 2-9, 16-19.

---

[1] Because Defendant failed to comply with the Court's directive to file a cross-motion for summary judgment, Doc. 15, and in the interest of expediency, the Court construes her *Response Brief*, Doc. 18, as a summary judgment motion.

B.  **Factual Background**

Plaintiff was 46 years old at the time of the Administrative Law Judge's ("ALJ") decision. Doc. 14-3 at 39. He had a seventh-grade education and past relevant work experience as a parts loader, construction worker, warehouse worker, and forklift driver. Doc. 14-3 at 40-41.

In terms of his medical history, in August 2011, Plaintiff was assessed with diabetes mellitus type 2 uncontrolled, right hip and shoulder pain, and morbid obesity. Doc. 14-12 at 30-32. It was noted, however, that he had full musculoskeletal range of motion. Doc. 14-12 at 31. Plaintiff's diagnoses were reaffirmed on numerous occasions thereafter, with the addition of new diagnoses of hypertension, myalgia, and myositis. Doc. 14-12 at 37-41, 43-47, 50, 53-55, 57, 61-63, 64-67. Plaintiff informed doctors in August 2011 and February 2013 that he had applied for disability benefits due to his diabetes. Doc. 14-12 at 32, 39.

In October 2013, Plaintiff went to the hospital complaining of lower back pain and right hip pain after he had spent the previous three days moving furniture and unloading a truck. Doc. 14-12 at 40. He could fully bear weight, his gait was steady, and sitting and flexing forward relieved some of the pain in his hip, in which he still had full range of motion. Doc. 14-12 at 42. A physical examination revealed an antalgic gait, painful and reduced lumbar spine range of motion, and a positive straight leg raise test on the right. Doc. 14-12 at 44. An x-ray of Plaintiff's hip taken that month showed moderate to severe discogenic degenerative changes at L4-L5 which could cause referred hip pain. Doc. 14-11 at 4. In November 2013, however, Plaintiff had full musculoskeletal range of motion and walked with only a slight limp. Doc. 14-12 at 46-47.

Plaintiff underwent a consultative examination by Dr. David Ukoha, M.D. in December 2013. During the examination, Plaintiff rated his low back pain as ten on a ten-point scale, and stated that the pain, as well as numbness and tingling, lasted all day and radiated into both legs. Doc. 14-10 at 24. Plaintiff reported that his back pain decreased with rest and NSAIDs and increased with performance of activities of daily living. Doc. 14-10 at 25. Dr. Ukoha noted that Plaintiff's gait was normal and satisfactory, and his sensory exam was within normal limits. Doc. 14-10 at 26. The doctor noted that Plaintiff had mild difficulty squatting, hopping, tandem walking, and heel toe walking due to back pain, he had a positive straight leg raise test bilaterally, and a decreased spinal range of motion. Doc. 14-10 at 26. Dr. Ukoha assessed Plaintiff with chronic non-specific low back pain, lumbar radiculopathy, degenerative joint disease of the lumbosacral spine, obesity, diabetes mellitus type 1, and diabetic neuropathy. Doc. 14-10 at 27.

In March 2014, Plaintiff reported that he was unable to walk due to hip pain that resulted from him twisting to the left. Doc. 14-12 at 54-55. Shortly thereafter, however, the emergency room doctor noted that Plaintiff had walked without difficulty to the nursing station to ask a question despite not having any pain medication administered. Doc. 14-12 at 57-58. Two weeks after the injury, Plaintiff reported that the pain had lessened and he was not taking prescription ibuprofen due to the improvement. Doc. 14-12 at 61. He walked with a steady gait, and a straight leg test was negative bilaterally. Doc. 14-12 at 61. A CT of Plaintiff's lumbar spine taken that month showed multilevel degenerative changes with severe spinal canal stenosis at L4-L5 and L5-S1, and multilevel mild to moderate bilateral foraminal narrowing. Doc. 14-11 at 7-8.

## C. The ALJ's Findings

In July 2015, the ALJ found that Plaintiff has the severe impairments of obesity, lumbar disc disease, diabetes, hypertension, a history of hernias, and gastroesophageal reflux disease and had the non-severe impairments of hand pain and urinary frequency. Doc. 14-3 at 22-23. The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, but would need to take a two- to three-minute stretch break at his workstation after 30 minutes of sitting. Doc. 14-3 at 24. Additionally, the ALJ found that Plaintiff should not be required to handle complex instructions. Doc. 14-3 at 24. The ALJ concluded that while Plaintiff is unable to perform any of his past relevant work, he is capable of performing other work that exists in significant numbers in the national economy. Doc. 14-3 at 27-29.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any

other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, VE testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan,* 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their citations to supportive evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d

156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

## III. ARGUMENT AND ANALYSIS

Plaintiff argues that the ALJ's RFC finding is inconsistent with the evidence of record. Doc. 17-1 at 5. Relatedly, Plaintiff asserts that the ALJ failed to adequately develop the record and properly consider his complaints and the effect of his obesity in combination with his other impairments. Doc. 17-1 at 5, 7-10.

Defendant responds that the ALJ's determination is correct because Plaintiff's subjective complaints of disabling impairments were not supported by the record. Doc. 18 at 7-11. Additionally, Defendant maintains that the ALJ expressly factored Plaintiff's obesity into his RFC determination in combination with Plaintiff's other impairments. Doc. 18 at 11-12. Finally, Defendant argues that Plaintiff's overall treatment history undermines his allegations of disabling impairments, most notably (1) Plaintiff's minimal treatment over the 18 months prior to the ALJ's decision; (2) Plaintiff's report that he took only over-the-counter medication for pain relief; and (3) Plaintiff's reported activities of daily living, including preparing food, taking out the trash, grocery shopping, lifting ten pounds, and doing laundry. Doc. 18 at 12-14.

The RFC is an assessment, based on all relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001) (per curiam). The RFC is the most a claimant can do despite his physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether a claimant can work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In assessing a claimant's RFC, the ALJ must consider limitations

and restrictions imposed by all the individual's impairments, even those that are not severe. SSR 96-8p, 1996 WL 374184; 20 C.F.R. §§ 404.1523, 416.923. Finally, the ALJ must consider a claimant's obesity in combination with his other impairments in assessing his RFC. SSR 02-1p, 2000 WL 628049 (stating that obesity remains a complicating factor for many ailments and is a "medically determinable impairment" to be considered in assessing an individual's RFC).

As an initial matter, the ALJ plainly considered Plaintiff's obesity and the combined effects of his impairments – whether severe or not – in assessing Plaintiff's RFC. First, the ALJ noted that Plaintiff's height and weight resulted in a body mass index of approximately 40, which classified him as obese. Doc. 14-3 at 25. The ALJ then expressly "considered the possibility that he may experience some limitations due to obesity as required by SSR 02-01." Doc. 14-3 at 25. While the ALJ stated that he did not observe any objective evidence showing that Plaintiff was limited by his obesity, he maintained that he had given Plaintiff that benefit of the doubt in assessing his RFC, noting that the excessive weight could exacerbate Plaintiff's back pain, diabetes, and hypertension. Doc. 14-3 at 25-26.

The ALJ then assessed the combined effect of all of Plaintiff's impairments when determining his disability status. *See* Doc. 14-3 at 24 (stating that he "ha[d] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical" and other evidence); Doc. 14-3 at 24-25 (stating that Plaintiff's chronic back pain and radiating hip pain could reasonably be expected to cause some limitations); Doc. 14-3 at 25 (noting that despite Plaintiff's allegations of such pain, he admitted to being capable of performing various activities of daily living); Doc. 14-3 at 26 (assessing Plaintiff's "longitudinal medical record" in determining that the objective evidence did not support the degree of his alleged impairments); Doc. 14-3 at 27 (assessing Plaintiff's RFC after "a thorough

review of the evidence of record," including, *inter alia*, "the objective medical findings, medical opinions, [and] treatment notes"). Accordingly, the ALJ adequately considered the combined effects of Plaintiff's impairments.

Finally, the ALJ's resulting RFC was supported by substantial evidence. First, Plaintiff could engage in a number of activities of daily living as noted above, including preparing simple meals, taking out the trash, washing laundry, and grocery shopping. Doc. 14-7 at 6-7. Additionally, Plaintiff admitted that he could "always" pay attention, finish what he started, had no significant difficulty following instructions, and got along fine with authority figures. Doc. 14-3 at 47-48; Doc. 14-7 at 9-10. The ALJ also noted that Plaintiff acknowledged to Dr. Ukoha that he had no problems completing his personal care and could lift ten pounds and, in fact, had helped a friend move furniture for several days. Doc. 14-3 at 25-26; Doc. 14-7 at 9; Doc. 14-10 at 24-25; Doc. 14-12 at 40. Further, (1) Plaintiff had received only minimal medical treatment over the prior several months; (2) as late as April 2014, he was not taking prescription pain medicine; and (3) as the ALJ observed, there was no medical source statement to support his claim that he was completely unable to work. Doc. 14-3 at 26; Doc. 14-7 at 52; Doc. 14-12 at 59, 61. Finally, during medical examinations, Plaintiff exhibited normal grip strength and musculature, a steady gait, full range of motion in his hips, only mild difficulties in performing such activities as squatting and tandem walking, and he reported that his pain was alleviated when he flexed forward while sitting. Doc. 14-3 at 26; Doc. 14-10 at 26; Doc. 14-12 at 42, 46-47; Doc. 14-12 at 61. Because the ALJ properly considered the evidence and assessed an RFC that is supported by substantial evidence of record, he did not err in finding that Plaintiff is not disabled. *Greenspan*, 38 F.3d at 236.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 17, is **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 18, is **GRANTED**, and the Commissioner's decision is **AFFIRMED**.

**SO ORDERED** on January 25, 2017.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE